JEAUME *et al. v.* NEW YORK, L. & W. RY. CO.

(*Superior Court of Buffalo, General Term.*   February 2, 1891.)

</div>

CHANGE IN GRADE OF STREET—RAILROAD EMBANKMENT—ABUTTERS.

    Defendant railroad company, having obtained leave from the city council, pursuant to Buffalo City Charter, (Laws N. Y. 1870, c. 519,) tit. 3, § 19, to lay its tracks in W. street, the fee of which was in the city, built an embankment 24 feet wide and 6 feet high at its highest point, and running down to the grade of the street 359 feet from the point of beginning, with a perpendicular retaining wall on each side. The embankment was about 3 feet high in front of plaintiff's premises and 9 feet from the curb on that side of the street. A double track was laid on it, leaving a space 4 feet wide on one side of the tracks and 5 feet wide on the other. It was paved, but teams could not be driven on it except along the tracks laid thereon, and plaintiff could not go on it from her premises except by going east to C. street, where an approach of gradual elevation had been made, or by going west to the point where the embankment reached the grade of W. street. No proceedings were taken to change the grade of W. street, as prescribed by title 9, § 8, of the city charter, such as obtaining the consent of the abutting owners, or giving them notice, etc. *Held,* that the embankment was not a change in the grade of the street, but was such a permanent and exclusive appropriation of a portion thereof as would authorize plaintiff to maintain an action for damages. Following *Reining v. Railway Co., ante,* 238.

Appeal from trial term.

Action by Romanna Jeaume and another against the New York, Lackawanna & Western Railway Company. There was a judgment for plaintiffs, and defendant appeals.

Argued before BECKWITH, C. J., and TITUS, J.

*Rogers, Locke & Milburn,* for appellant.   *Laughlin, Ewell & Haupt,* for respondents.

TITUS, J.   This action and two others (*Strasser v. Railway Co.,* not reported, and *Reining v. Railway Co., ante,* 238) involve the same question of the plaintiff's right to recover, the facts being similar in each case, argued at the same time, and submitted substantially upon the same brief by the defendant's counsel. The gist of the action is based upon the fact that the defendant built an embankment in and along Water street, on which it laid tracks to operate its railroad. The fee of the street is in the city of Buffalo. Water street, in front of the plaintiff's premises, is 48 feet wide between the curb lines. The embankment is 24 feet wide, and the retaining wall 9 feet from the curb line of the street. The embankment commences at Commercial slip and runs westerly along Water street to Commercial street, where it reaches its greatest elevation, being nearly six feet above grade. From that point it runs on down grade westerly past Maiden lane and past the plaintiff's premises to a point 356 feet west of Commercial slip, where it touches the grade of the street. Opposite the plaintiff's premises the walls of the em-

bankment are from two feet six inches to three feet in height. There is no approach to or way of getting onto this elevated surface for footmen or teams except at Commercial slip, where stone steps have been erected for persons passing along on foot, and an approach of gradual elevation for teams crossing Water street. There is no approach from Maiden lane to the elevated road, and, to get onto it, from that point the plaintiff must pass westerly along the side of the embankment to where it approaches street grade, or go easterly past Maiden lane to Commercial street and up the approach in that street. When he gets onto the elevated grade, he finds two railroad tracks in front of his premises, occupying, including the space between the tracks, 15 feet, with a space of 4 feet on one side and 5 feet on the other, to the outer edge of the retaining wall. The surface is paved with stone. In front of the plaintiff's premises teams cannot pass each other by reason of this structure. The plaintiff's lot is west of Maiden lane and on the north side of Water street.

The principal question presented by these facts is, is this such a permanent and exclusive appropriation of a portion of the street as will authorize the plaintiff to maintain an action against the defendant for damages, or is it a simple change of grade of the street, made in the manner pointed out by the charter? I regret that I cannot concur with my learned associate in the conclusion reached by him in the *Reining Case.* It cannot be denied, I think, that the structure, built, as it is, of solid, quarried stone retaining walls, filled in between with clay and gravel, and paved on the surface, is a permanent structure. Whether that portion of the street occupied by the embankment is exclusively occupied by the defendant company within the meaning of the decision in *Story* v. *Railroad Co.*, 90 N. Y. 122, as explained and construed by subsequent decisions in the court of appeals, is not quite so clear. From the arguments used by the learned judges of the court of appeals in the discussion of this question it seems to me that it must be assumed that if a wall had been built along the street in front of the plaintiff's premises, of the height and character of the retaining walls now standing there, of sufficient width only to enable the defendant to lay its tracks, such a structure would be such an exclusive appropriation of the street to the purposes of the defendant as would entitle him to maintain this action, because, in that case, it could not be claimed that the embankment was a simple change in the grade of the street, but an absolute and exclusive appropriation of it so as to destroy, in part at least, the easement which the plaintiff, as abutting owner, has in the street. How wide, then, and how much surface must the embankment cover that it shall not be deemed a structure devoted exclusively to the uses of a railroad? Clearly it must depend somewhat upon the facts proven in a given case. Judge TRACY, at page 170, in the *Story Case,* says: "Whether a particular structure authorized by the legislature is consistent or inconsistent with the use of the street for street purposes must be largely a question of fact, depending upon the nature and character of the structure authorized." The verdict in this case must be considered as a finding in the affirmative on this proposition, although the precise question was not submitted to the jury. In this connection the learned judge continues: "The extent to which the plaintiff's property is appropriated is not material. It cannot, nor can any portion of it, be appropriated to the public use without compensation." Again, at page 171: "The fee remained in the owner making the dedication, he having sold lots abutting upon the street. The purchaser * * * obtained a perpetual right of way over the space called a "street" to the full extent of its dimensions. Whether the bed of the street was excepted from the grant of the city, and the title thereof never vested in the grantees, or whether the bed of the street was included in the grant, and passed to such grantees, is of little importance, as in either event the plaintiff has a private easement of a right of way in the street, coupled with an express covenant that the entire space marked on the map as 'Front Street' shall forever be kept as a pub-

lic street,"—and follows with the conclusion that the defendant's road encroaches upon the plaintiff's easement, and appropriates his property to its uses, which it cannot do without making compensation. The fact that the embankment is not of the dimensions which I have supposed, does not, it seems to me, make any difference. The plaintiff cannot get onto the elevated portion of the street from Water street in front of his premises, but, as appears, must go around by Commercial street, thus being deprived of access to that portion of the street from his premises, and is therefore deprived of that right of access to the street which, as an abutting owner, he is entitled to. 3 Kent, Comm. 432; Elliott, Roads & S. 557. As to the elevated portion of the street, he occupies the same position as the public, and can get onto it in no different way; so that he is deprived of that peculiar easement in the street, namely, access from his property, which is recognized as appurtenant and incident to his ownership of the premises. The elevated road is 24 feet wide in front of the plaintiff's premises, on which are two tracks running parallel with each other, leaving no sufficient space for the public to drive over and along the street, unless it be upon the track of the railroad. While it is possible to drive along on this surface with teams, as it might be on any railroad track, can it be said that that portion of the street is not devoted exclusively to the use of the defendant for railroad purposes? If a person should drive upon the elevated portion of the street, he could not get off at Maiden lane, and it would, it seems to me, not only be careless, but extremely dangerous, to attempt it. There is no place to turn out, no street to turn onto, to avoid an approaching train, and the alternative of being run over by the engine or precipitated down onto the street below is presented. Practically it amounts to an exclusion by the defendant of the public from the use of that portion of the street by reason of the danger attending it. What is impracticable and dangerous to do should not be done, and if a party is deprived of the use of a street without great hazard to himself, it seems to me it amounts to a deprivation of his right to use it. In the *Story Case* it was possible to use the street. Light and air were not entirely shut off, but a portion of the street above the surface was appropriated to the exclusive use of the elevated railroad, which shut off some of the light and air, and the iron posts standing in the street prevented facility of access to the premises of the plaintiff. In this view it can make no difference whether the defendant company was required to pass over Commercial slip at a certain elevation above the water in the canal or not. That fact cannot prejudice the plaintiff or affect his right so as to deprive him of access to the street.

It is claimed that the *Forbes Case*, 24 N. E. Rep. 919, 121 N. Y. 505, has in some manner explained and limited the effect of the *Story Case*, and that the law as there laid down is inconsistent with the plaintiff's right to recover in this action. I confess I do not so understand it. In that case tracks were laid upon the surface of the street, presenting no permanent obstruction to travel by the public, and nothing except the occasional passage of trains to interfere with the unobstructed access to the plaintiff's premises. In speaking of the *Story Case* Judge PECKHAM says: "The case embodied the application of what was regarded as well-established principles of law to a new combination of facts, such facts amounting, as was determined, to an absolute and permanent obstruction in a portion of the public street, and in a total and exclusive use of such portion by the defendant, * * * which amounted to a taking of some portion of the plaintiff's easement in the street for the purpose of furnishing light, air, and access to his adjoining lot. * * * The structure permanently, and at every moment of the day, took away from the plaintiff some portion of the light and air which otherwise would have reached him, and interfered with and took away from him his facility of access to his lot." The learned judge lays stress upon the fact that in the *Forbes Case* the surface of the street was not interfered with, but was sub-

jected to an additional burden not inconsistent with its use as a street, for which an abutting owner can have no right of action.

In the case before us there can be no question but that the embankment takes away from the plaintiff his right of facility of access to his lot, and seriously interferes with the convenient use of it. I cannot see that the *Forbes Case* in any way limits the *Story Case;* nor does it appear that the learned court intended·to change the rule as applicable to cases where the facts warranted the conclusion that there is an absolute appropriation of the street to the exclusion of the public, as I believe we are warranted in assuming in the case before us. In the *Lahr Case,* 104 N. Y. 268, 10 N. E. Rep. 528, the principle of the *Story Case* is emphatically affirmed. Chief Judge RUGER, in the opinion of the court, says: "The doctrine of the *Story Case,* therefore, although pronounced by a divided court, must be considered *stare decisis* upon all questions involved therein, as establishing the law as well for this court as for the people of the state whenever similar questions may be litigated. Wherever, therefore, the principles of that case logically lead us, we feel constrained to go and give full effect to the rule therein stated,—that abutters upon public streets in cities are entitled to such damages as they may have sustained by reason of the diversion of the street from the use for which it was originally taken, and its illegal appropriation to other and inconsistent uses." This rule is practically concurred in by all of the judges of the court, Judges EARL and FINCH adding a memorandum that "it gives abutting owners only damages for the construction of a railway in front of their premises, resulting from the taking or destruction of their street easements of light, air, and access." It is claimed that the *Ottenot Case,* reported in full in 23 N. E. Rep. 169, is decisive of the character of the structure erected in Water street, and is controlling here. In that case the plaintiff's lot was situated in Commercial street 40 feet south of the exterior line of Water street. The embankment complained of was erected by the defendant under the authority of the city as an approach to the crossing on Water street, and, as I understand from what was said by the learned judge who wrote the opinion in that case, it had reference to the construction of the approach, and not to the structure in Water street, as the character of that structure was not necessarily in question, or the right of the defendant to construct it. The street was not subjected to any new use. No railroad tracks were laid on the embankment, and it continued to be devoted simply to street purposes; the learned judge saying: "The railroad was built by lawful authority through Water street, and of its existence there, and of any damages caused thereby, the plaintiff had no right to complain, as he was not an abutting owner on that street, and had no property rights therein. I do not think this case is decisive of the question involved here, for the reason that there was no railroad in Commercial street, and no question of appropriation of the street for railroad purposes. While the opinion was written by one of our most learned and distinguished judges, it is not concurred in by a majority of the court, and the judgment was reversed upon other grounds not involving the questions here discussed. The case of *Conklin* v. *Railway Co.,* 102 N. Y. 107, 6 N. E. Rep. 663, was followed, in which the facts were similar to the facts in the *Ottenot Case.* It seems to me, therefore, that the structure in Water street must be held a permanent structure, and, to the extent that it occupies the street, an absolute appropriation to the exclusive use of the defendant's railroad. Whether the elevation in Water street is a legal structure, assuming that it is simply a change of grade, has not heretofore been considered by this court. While the question is not now raised by the plaintiff's counsel in this case, it is claimed by the learned counsel in the *Reining Case* that the proceedings pointed out by the charter to be pursued in opening and changing the grade of streets has not been followed, and consequently it is claimed that the change of grade was wholly unauthorized by law. Inasmuch as

these cases were, by consent of the various counsel engaged in them, argued before all of the judges, with the understanding that the facts in each case were the same in all, I deem it not inappropriate to consider that question as bearing upon this case; the more so, as my learned associate has discussed the question in his opinion in the *Reining Case,* and as the evidence upon this question is precisely the same in both cases.   To call this structure in Water street a change of grade is a misnomer.   It is an embankment built by the defendant for railroad purposes, and not for street purposes, and is for the benefit and profit of the defendant, and not for the accommodation or convenience of the public.   The grant of the city of Buffalo to it was a free gift of inestimable value to the stockholders and owners of that corporation, and in its relation to the rights of individual property owners the company must rely upon the letter of the law, and not upon a loose or favorable construction by the court, to enable it to escape the payment of reasonable damages to individual property owners necessarily resulting from the building of its railroad in the street.   The learned counsel for the defendant so persistently characterizes the structure as a change of grade of the street that without considerable examination we are led into the use of the phrase without quite comprehending what is required by the charter to effect a change of grade, and what was done by the city which has effected a change, or whether it has been done, or attempted to be done, by the city authorities at all.   Section 28 of the general railroad act (chapter 140, Laws 1850) authorizes a railroad to construct its road along the streets of the city, with the consent of the municipality; and by section 19, tit. 3, of the city charter, (chapter 519, Laws 1870,) "the common council, by a vote of two-thirds of all its members elected, may permit the track of a railroad to be laid in, along, or across any street or public ground."   It appears that in 1882 the common council, with the approval of the mayor, granted permission to the defendant corporation to lay its tracks along Water street pursuant to the authority given by the charter, and so far as the consent of the city could give authority the company had the right to lay its tracks in Water street.   These proceedings of the common council simply give the consent of the city of Buffalo, as authorized by the general railroad law, in pursuance of the authority conferred upon the common council by section 19 of the charter above referred to.   No steps are necessary in granting such authority but an application by the company and a resolution by the common council authorizing it.   The steps pointed out by the charter to change the grade of a street were not taken.   There is nothing to indicate that anything more was intended than to pass a resolution giving the permission authorized by the charter.   If this is true, then the defendant's construction that a change of grade has been effected cannot be upheld, unless the requirements of the charter to effect a change of grade are meaningless words.   I cannot assent to the proposition.   From an examination of the provisions of the charter it seems that certain steps are required to be taken, and a degree of formality is pointed out which was deemed essential by the legislature to be observed, before the established grade of a street could be changed.   The reasons for such a formal proceeding are so numerous and obvious that they readily suggest themselves.

The property owner is in some manner to be apprised of what is intended to be done by the common council that he may be heard, not only on the question of taxation, but that his interests in the street may be consulted and protected through his representatives in the council, and that, if his property has been damaged, he may have to resort to the methods provided by the charter to indemnify himself for the damage he has sustained.   Section 2 of title 9 provides that the grade of the street shall be established and described, and a description of such grade, and all alterations thereof, shall be recorded by the city clerk.   Section 7 authorizes the common council to change the grade of streets, and when the expense exceeds $500, it is provided by section

8 that the work shall not be done but by a vote of three-fourths of all the members elected to the common council, after notice of intention to order the work has been published, three times a week, for two weeks, or unless the improvement has been applied for by a majority of the owners of land fronting on the street representing two-fifths of the feet front of land on the street in which the improvement is to be made. Section 17 provides that when the city shall alter the recorded grade of any street the owner of lands fronting on the street, whose property has been damaged, may within one year present his claim to the common council, and the sum allowed shall be assessed upon the property benefited. It will be observed that this section is found in the title of the charter making provision for the care and change of grade of the streets, and has no necessary connection with that provision of the charter which authorizes the common council to grant permission to railroads to lay their tracks in the street. It would be quite difficult, it seems to me, to comply with the charter, and assess a tax upon the property benefited, by constructing this embankment in Water street, unless it was upon the property of the defendant, because it is not observable how any of the property along Water street is benefited by this structure. It is not claimed that any of these provisions were observed in the proceedings which resulted in granting the right of way to the defendant, but by some unexplained short cut the council has changed the grade of the street, entirely ignoring the mode of procedure provided by the charter without intending to do so. It occurs to me that the common council obtained no jurisdiction of the matter to enable it to change the grade of the street, and could not have levied a valid assessment upon property to pay the expense incurred, and hence could not legally pay the plaintiff or any other person whose property was damaged by the so-called change of grade. This, it seems to me, is a proper test: Could the common council levy a valid assessment upon property for damage accruing to abutting owners for the structure in Water street without in any way conforming to the provisions of the charter authorizing a change of grade to be made? I am aware that it is said in the *Ottenot Case* that the plaintiff should have pursued his remedy under the provisions of section 17 of the charter. The fact was undoubtedly overlooked that that section had reference to the change of grade in the manner pointed out by the charter, and not to damages resulting from building an embankment under the authority of the common council, given pursuant to section 19 of title 3. The fact that the property owners are not called upon to pay for the embankment cannot affect the question, for they have other rights besides the one of paying taxes, which are to be considered in this connection, and not the least of these is the right to damages, if they have been injured by the unlawful act of the defendants. The plaintiff has had no opportunity to present his claim to the city, as he has received no notice that the grade was to be changed unless he must take notice from the fact that work was in progress. The charter does not make the minutes of the common council notice to the public for any purpose, when such notice is required to be given, and the statute of one year limitation might run before he could receive notice that proceedings for a change in the grade of the street had been instituted. The provisions of the charter, so far as they have been passed upon, have been uniformly strictly construed by the courts, and no act of the common council not expressly authorized by it has been upheld. The city possesses only such power as the legislature has conferred upon it, and it can only exercise such power in the mode pointed out by the statute giving it. It therefore seems to me that there has been no change of grade in Water street within the meaning of the charter, but simply a permit to the defendant to lay its tracks in that street, and no opportunity has been presented to the plaintiff to present a claim for damages to the city, and no authority is given the city to pay damages for proceedings instituted under that provision of the charter. If the defendant is otherwise liable for damages, it

cannot shield itself by the fiction of a change of grade in the street under authority from the common council, as no such authority has been given by it. I have considered none of the other objections in the case relating to the admission of evidence, because in the interest of these litigants and the public the question of the right to maintain these actions should be first determined and set at rest.   The judgment should therefore be affirmed, with costs.